IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 3, 2010

**TERRANCE FORREST v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-08-284      Roy Morgan, Judge**

**No. W2009-02301-CCA-R3-PC  - Filed September 29, 2010**

The petitioner, Terrance Forrest, appeals the denial of his petition for post-conviction relief wherein he challenged his 2008 guilty-pleaded convictions of three counts of aggravated robbery, three counts of aggravated kidnapping, and aggravated burglary.  In this appeal, he contends that he was denied the effective assistance of counsel and that his guilty pleas were not knowingly, voluntarily, and intelligently entered.  Because the petitioner has failed to establish his claims by clear and convincing evidence, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Terrance Forrest.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 17, 2007, the petitioner entered guilty pleas to three counts of aggravated robbery, one count of aggravated burglary, and three counts of aggravated kidnapping, and on September 19, 2007, the trial court imposed an effective sentence of 12 years' incarceration. In a post-conviction petition filed on September 22, 2008, the petitioner challenged his pleas on grounds that the pleas were not voluntarily entered and that he had been deprived of the effective assistance of counsel. Following a November 6, 2008 hearing, the post-conviction court dismissed the petition as untimely.  The petitioner filed a timely

notice of appeal, and the State filed a motion conceding the timeliness of the petition and asking this court to remand the case to the post-conviction court. Finding that the petitioner had delivered his petition to prison authorities for mailing before the expiration of the post-conviction statute of limitations, this Court granted the State's motion and remanded the case to the post-conviction court for an evidentiary hearing on the claims in the petition for post-conviction relief.

At the October 19, 2009 hearing, the petitioner admitted that he stated at the guilty plea submission hearing that he was satisfied with the representation provided by his trial counsel, but he insisted that he only did so on the advice of counsel. The petitioner stated that he provided trial counsel with the names of witnesses, in particular his "baby mama, Nickie Ballard," who would have rebutted the testimony of one of the victims, Kevin Jewell, that he met the petitioner for the first time on the date of the offenses. The petitioner conceded that trial counsel had provided him with copies of the discovery materials, but he stated that counsel refused to discuss potential defense strategies. The petitioner insisted that rather than an aggravated kidnapping and aggravated robbery, the offenses were instead an altercation between he and Kevin Jewell over "a drug deal gone bad."

The petitioner stated that, because of his "seven or eight months" of pretrial incarceration, he "wasn't in [his] right mind frame" at the time he entered the guilty pleas. He stated, "I wanted to go to trial, but I didn't want to do all that time if I'd have got found guilty for 12 people judging me, but I just . . . didn't know a lot about the case, you know." The petitioner explained that he chose to plead guilty because trial counsel told him that he would likely receive a greater sentence than that encompassed in the plea agreement if found guilty following a trial.

The petitioner testified that he also asked trial counsel to force Mr. Jewell and the other victims to submit to a drug test. He stated that he told trial counsel that his cousin, Randall Bowers, would have testified that Mr. Jewell had visited the petitioner's house on several occasions prior to the crimes.

The petitioner claimed that trial counsel coerced him into pleading guilty by telling him that if he accepted the State's offer he would at least be out of prison in time to see his children "before they get grown." The petitioner stated that trial counsel also told him that success at trial was highly unlikely. The petitioner also complained that trial counsel failed to explain to him that he would be required to serve 10 years of his sentence at 100 percent. He conceded, however, that the trial court had informed him that he would serve 100 percent of 10 years.

During cross-examination, the petitioner admitted that during the guilty plea

submission hearing he told the trial court that he understood that he would have to serve 10 years "[d]ay for day." He acknowledged that trial counsel "had already told [him] what 100 percent was three or four days before [he] went to court and got 10 at 100 percent." The petitioner insisted that he entered his guilty pleas because he felt he "couldn't win" at trial. The petitioner denied selling drugs to Mr. Jewell and instead claimed he was "a middle man." He refused to answer who had provided the drugs to him, at first claiming he did not know who had provided him with drugs and later saying that he would not reveal the individual's name, saying, "The third person, he ain't coming to court. He ain't got nothing to do with this." The defendant conceded that he had lied under oath.

Nickie Ballard testified that she had known the petitioner for "[s]ix or seven years" and that the two had three children together. She stated that she had seen the petitioner and Mr. Jewell together on one occasion. She said that Mr. Jewell did not appear scared to be in the petitioner's presence.

Trial counsel testified that he had practiced law for 33 years and that his practice was devoted exclusively to criminal defense. He stated that at the time he represented the petitioner, he had represented more than 10,000 criminal defendants, including 27 defendants facing the death penalty. Trial counsel testified that he met with the petitioner on five occasions at the jail and on other occasions when they were in court. He stated that he discussed the facts and circumstances of the case with the petitioner and that the two reviewed the discovery materials together. He stated that the petitioner likely told him about Ms. Ballard as a potential witness and that he believed the petitioner's claim that he and Mr. Jewell had known one another prior to the crimes. He said that the relationship "may or may not have had a bearing with a jury."

Trial counsel stated that "the absolute danger" in the petitioner's case was that the petitioner "had been indicted for Class A felonies that he could have received 15 to 25 years for each at the release eligibility date of 100 percent." Counsel said that he approached negotiations with the State with the primary goal of getting the petitioner the shortest sentence possible. He stated that he used the previous relationship between the petitioner and the victim to his advantage during plea negotiations. Counsel stated that he informed the petitioner of his constitutional rights and that he "had no problem with trying [the petitioner's] case if that's what [the petitioner] wanted." He said, "I had to be somewhere that day; just as soon be trying a case with him as sitting at the office." Trial counsel nevertheless recommended "[w]holeheartedly" that the petitioner accept the plea offer from the State. Counsel denied telling the petitioner that a loss at trial was "inevitable" but stated that he told the petitioner that he "didn't feel like [the petitioner] would walk away unscathed."

At the conclusion of the hearing, the post-conviction court denied relief, finding that the petitioner had failed to establish his claims by clear and convincing evidence. In a later-filed written order, the trial court concluded that "[c]ounsel's preparation for trial was well within the standards required of competent counsel," that counsel had met with the petitioner a sufficient number of times to adequately convey the nature and circumstances of the offenses as well as the potential penalties and defenses, and that "the petitioner's decision to plead guilty was freely, knowingly and intelligently made."

In this appeal, the petitioner again complains that he was deprived of the effective assistance of counsel because trial counsel failed to discuss possible defenses, failed to contact Ms. Ballard, and coerced him into entering pleas of guilty. He also complains that trial counsel's deficient performance led to his entering guilty pleas that were neither knowing nor voluntary. The State contends that the petitioner has failed to establish either claim by clear and convincing evidence. We agree with the State.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

*I. Ineffective Assistance of Counsel*

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The evidence adduced at the evidentiary hearing established that trial counsel informed the petitioner of the nature and circumstances of the charged offenses, the potential penalties, the available defenses (or lack thereof), and the likelihood of success at trial. Trial counsel stated that his primary goal was that the petitioner not receive lengthy sentences with a 100 percent release eligibility date. As a result, he entered into negotiations with the State, using information provided to him by the petitioner about the petitioner's previous relationship with one of the victims, and he managed to secure a plea offer that required only 10 years to be served at 100 percent. The petitioner failed to establish that any act or omission by trial counsel enured to his detriment. In consequence, he is not entitled to post-conviction relief on this ground.

## II. *Voluntariness of Guilty Pleas*

"The validity of a guilty plea is a mixed question of law and fact." *Jeffery*

*Aaron Lane v. State*, --- S.W.3d ---, No. E2007-00032-SC-R11-PC, slip op. at 6 (Tenn., July 14, 2010) (citing *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003)). "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)).

> A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For his waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

*Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). Thus, "a claim . . . that a plea was not voluntarily and knowingly entered, implicates his due process rights and therefore falls squarely within the ambit of issues appropriately addressed in a post-conviction petition." *Wilson*, 31 S.W.3d at 194. A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 195 (quoting *Boykin*, 395 U.S. at 242-43); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) ("Certainly, a plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats.") (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)); *Sexton v. State*, 151 S.W.3d 525, 532 (Tenn. Crim. App. 2004) (stating that "the nature of the proceeding, the exchange between the trial court and the petitioner, and the relatively beneficial plea agreement reflect the petitioner's knowledge and understanding that [his] constitutional rights relative to the trial process were not to be asserted by [him] any further").

Because the petitioner has failed to establish that his counsel performed deficiently, we cannot say that the ineffective assistance of counsel rendered the petitioner's guilty pleas involuntary or unknowing. The petitioner conceded that counsel explained that he would serve 10 years of his sentence at 100 percent service and that he chose to enter his pleas to avoid a more lengthy sentence following an unsuccessful trial. That the petitioner chose to plead guilty rather than risk garnering a harsher punishment does not establish that he was coerced to plead guilty but demonstrates that the petitioner's decision to plead guilty "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citing *Boykin*, 395 U.S. at 242; *Machibroda v. United States*, 368 U.S. 487, 493 (1962); *Kercheval v. United States*,

274 U.S. 220, 223 (1927)).  Under these circumstances, the petitioner has failed to establish that his guilty pleas were not knowingly, voluntarily, or intelligently entered.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE